FILED
DEC 22 2014
CLERK

Michael W. Strain
Strain Morman Law Firm
850 Main Street – PO Box 729
Sturgis, SD 57785
Telephone: (605) 347-3624
Facsimile: (605) 347-2091
mike@mormanlaw.com
Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAMON ADAMS<br>Plaintiff, | ) | CIV. NO.: 14-4191 |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT AND JURY DEMAND** |
| PERSONA, INC.,<br>Defendant. | ) | |

The Plaintiff, Damon Adams, for his Complaint against Defendant, states and alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff, Damon Adams, ("Plaintiff") is a natural person who resides in the County of Lake, State of South Dakota.

2. Defendant Persona, Inc., ("Defendant") is a South Dakota Corporation licensed to do business in the State of South Dakota.

3. At all times relevant hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of 42 U.S.C. § 12111.

4. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

5. Venue is proper in United States District Court, District of South Dakota, as the acts and/or omissions giving rise to this Complaint occurred in District of South Dakota.

## FACTS

6. Plaintiff began his employment with Defendant in or around February 1982.

7. Over the years, Plaintiff was promoted to various positions.

8. Plaintiff's job title at the time of his termination was Plant Manager. Plaintiff worked at Defendant's plant and warehouse in Madison, South Dakota.

9. Plaintiff is a qualified individual with a disability.

10. Plaintiff suffers from alcohol dependency.

11. Plaintiff's daughter is disabled.

12. Plaintiff's daughter suffers from an autoimmune disorder. At all times relevant hereto, Plaintiff's daughter required transfusion treatments every six (6) to eight (8) weeks.

13. At all times relevant hereto, Plaintiff's daughter's health insurance was provided by Defendant's employer-sponsored health insurance.

14. On or around November 1, 2011, Defendant's President of Human Resources, Carol Hinderaker ("Hinderaker") held a company meeting.

15. At that meeting, Hinderaker stated that premiums for Defendant's employer-sponsored health insurance were increasing 22.51%.

16. Hinderaker specifically stated that two employees were forcing the insurance rates higher.

17. Hinderaker stated that one reason the insurance premium rates were going to be higher was because one employee's daughter needed treatments every six (6) to eight (8) weeks and the treatments were expensive.

18. Hinderaker's statement was in reference to Plaintiff's daughter and her medical treatment.

19. On or around August 10, 2012, Plaintiff met with Defendant's Chief Executive Officer, David Holien ("Holien"), Defendant's Production Manager, Al Haselhorst ("Haselhorst") and Hinderaker.

20. During this meeting, Plaintiff was told that Defendant was engaging in a "fact finding mission."

21. During this meeting, Plaintiff was asked several questions about his consumption of alcohol.

22. Plaintiff admitted to struggling with alcohol dependency.

23. Hinderaker then advised Plaintiff that he should seek treatment, and that Defendant would provide him with ten weeks to pursue the same.

24. Plaintiff was further told that he was suspended from work and that his employment status would be reevaluated in thirty days.

25. Following this meeting, Plaintiff promptly investigated alcohol dependency treatment facilities and treatment options.

26. On or around August 13, 2012, Plaintiff spoke with Hinderaker over the telephone.

27. Hinderaker stated that Plaintiff was suspended and that Defendant would try to find a position for him after his return, but that it may not be in Madison, South Dakota.

28. Hinderaker further stated that Plaintiff would be paid for ten weeks using accumulated vacation pay, leaving him a balance of four more weeks of accumulated vacation pay.

29. On or around August 13, 2012, Plaintiff entered a 30-day in-patient treatment program for alcohol dependency.

30. On or around August 14, 2012, Plaintiff's wife, Jody, spoke with Dennis Holien, Defendant's Chairman of the Board.

31. Jody raised Hinderaker's comments at the company benefits meeting on or around November 1, 2011, referenced in Plaintiff's Complaint paragraphs 14–18.

32. Dennis Holien responded by telling Jody that Persona runs a report every so often to see which employees have the highest payout of insurance benefits, and that Plaintiff was one of the employees who had the highest payouts of insurance benefits.

33. On or around September 12, 2012, Plaintiff completed the 30-day in-patient treatment program for alcohol dependency.

34. On or around September 28, 2012, Plaintiff met with Persona's President, Greg Kulesa ("Kulesa"), Holien, Haselhorst and Hinderaker.

35. During this meeting, Plaintiff described his struggle with alcohol dependency, his love for his job, and his recovery and commitment to sobriety.

36. Plaintiff further stated that he wanted to return to his position as Plant Manager.

37. Plaintiff was told that Defendant was on a "fact finding mission" and that Defendant was "not prepared to make a decision" regarding his employment.

38. On or around October 10, 2012, Plaintiff met with Kulesa, Haselhorst, Holien, and Hinderaker.

39. Plaintiff was told that his employment was terminated, effective that day.

40. On or around October 12, 2012, Haselhorst sent an email to all Persona employees.

41. In that email, Hasslhorst revealed Plaintiff's medical condition and wrote that Plaintiff had been in a 30-day in-patient alcohol dependency program.

42. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

43. On or around February 7, 2013, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

44. By letter dated September 29, 2014, the EEOC dismissed Plaintiff's Charge of Discrimination and issued him a Notice of Suit Rights.

45. Plaintiff has timely commenced this action.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

46. Defendant, by and through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. These practices include, but are not limited to, terminating Plaintiff and altering the terms and conditions of his employment because of Plaintiff's disability, record of disability, or perceived disability.

47. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's disability, record of disability, or perceived disability, and failed to provide reasonable accommodation to Plaintiff.

48. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because of his disability, record of disability, or perceived disability.

49. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the anti-discrimination laws that protect Plaintiff.

50. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

51. Defendant, by and through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a). These practices include, but are not limited to, engaging in retaliatory conduct and terminating Plaintiff's employment because of Plaintiff's request for accommodation.

52. The effect of these practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his employment status because of his request for accommodation.

53. The unlawful practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the anti-retaliation laws that protect Plaintiff.

54. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT III
## VIOLATION OF THE CONFIDENTIALITY REQUIREMENTS OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

55. Defendant, by and through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a). These practices include, but are not limited to, disclosing confidential medical information regarding Plaintiff.

56. The Americans with Disabilities Act requires that information learned during a medical inquiry be collected and maintained on separate forms and in separate medical files and be treated as confidential records. 29 C.F.R. § 1630.14(c).

57. Defendant disclosed confidential medical information learned during the course of a medical inquiry to Plaintiff's former co-workers and subordinates.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, and other serious damages.

## COUNT IV
## ASSOCIATIONAL DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff realleges each and every paragraph of this Complaint.

59. Defendant, by and through its managers and officials acting on behalf of Defendant, and within the scope of their employment, engaged in unlawful employment

7

practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. These practices include terminating Plaintiff, and altering the terms and conditions of his employment because of the known disability of an individual, Plaintiff's daughter, with whom Plaintiff was known to have a relationship or association.

60. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's relationship or association with a disabled person.

61. The effect of these practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because of his relationship or association with a disabled person.

62. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the anti-discrimination laws which protect Plaintiff.

63. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant for the following:

a. Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of applicable federal laws which protect Plaintiff;

b. Enjoining Defendant and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c.  That Defendant be required to make Plaintiff whole for its adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

d.  That Plaintiff be reinstated to his job, or, in the alternative, be awarded front pay and the monetary value of any employment benefits he would have been entitled to by Defendant;

e.  That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant to statute, and;

f.  That the Court grant other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE**

Dated this ___19___ day of December, 2014.

STRAIN MORMAN LAW FIRM

By: _____
Michael W. Strain
Attorney for the Plaintiff
850 Main Street
P.O. Box 729
Sturgis, SD 57785
Telephone: (605) 347-3624
Facsimile: (605) 347-2091
mike@mormanlaw.com