UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
AUG 21 2015

************************************************************

| | | |
|---|---|---|
| DAMON ADAMS | * | CIV 14-4191 |
| Plaintiff, | * | |
| | * | MEMORANDUM OPINION AND ORDER |
| | * | DENYING DEFENDANT'S MOTION TO |
| | * | DISMISS |
| vs. | * | |
| PERSONA, INC. | * | |
| Defendant. | * | |

************************************************************

Before the Court is Defendant Persona, Inc.'s (Persona) motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Persona is seeking to dismiss two of Plaintiff Damon Adams's (Adams) causes of action. The first, Count II in Plaintiff's Complaint, is an allegation of unlawful retaliation in violation of the Americans with Disabilities Act ("ADA" or the "Act"). The second, Count IV of the Complaint, is an allegation of associational discrimination also in violation of the ADA. For the following reasons, the motion will be denied.

## BACKGROUND

Because this is a Rule 12(b)(6) motion to dismiss, the facts set out in the Complaint, taken as true, must be viewed in light most favorable to Complainant-Adams and all logical inferences must be drawn in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### A. Plaintiff's Alcohol Dependency

Adams began working for Persona in February 1982 at Persona's plant and warehouse in Madison, South Dakota. During his time with Persona, Adams was promoted to various positions, reaching the position of Plant Manager by the time Adams was terminated from employment. Adams, during all relevant time working for Persona, suffered from alcoholism. In August 2012, after being notified of possible alcohol related misconduct at the workplace, David

1

Holien (Holien), Persona's CEO, Al Haselhorst (Haselhorst), Persona's Production Manager, and Carol Hinderaker (Hinderaker), Persona's President of Human Resources, met with Adams. During this meeting, Adams was told that Persona was engaging in a "fact finding mission," Complaint at 3, and was asked questions about his alcohol consumption. In response, Adams admitted to his alcohol dependency. Hinderaker thereafter advised Adams to enter treatment and that Persona would allow him ten weeks leave. Additionally, Adams was suspended from work and his employment status set to be reevaluated in thirty days.

Several days following the "fact finding" meeting, Adams spoke with Hinderaker and was informed of his suspension. Hinderaker also stated that she would attempt to find a new position for Adams upon his return, but that it may not be in Madison. Furthermore, Adams was informed by Hinderaker that the ten weeks of leave would be covered through Adams's accumulated vacation pay and that he would have four weeks of accumulated vacation pay remaining. Adams entered a 30-day treatment facility on the same day he spoke with Hinderaker. He completed the treatment on September 12, 2012 and, on September 28, again met with Holien, Haselhorst, Hinderaker, and Greg Kulesa (Kulesa), Persona's President. At this meeting, Adams detailed his struggle with alcoholism and expressed his commitment to his job, his recovery, and sobriety. Further, Adams stated his wish to return to his old position as Plant Manager. Adams was again told that Persona was engaging in a "fact finding mission" and that it was "'not prepared to make a decision'" as to Adams's employment. Complaint at 4. On October 10, 2012, Adams again met with Kulesa, Haselhorst, Holien, and Hinderaker. This time Adams was told that Persona was terminating Adams as of that day.

### B. Daughter's Autoimmune Disease

Adams's daughter suffers from an autoimmune disease requiring transfusion treatments every six to eight weeks. Adams's daughter's health insurance was provided through Adams's insurance plan with Persona. In November of 2011, Hinderaker held a company meeting wherein she stated that Persona's health insurance premiums were to be increased to 22.51%. It was also at this meeting that Hinderaker stated that two of Persona's employees were causing the premium hike. Specifically, the Complaint alleges that Hinderaker implicitly named Adams as one of the two employees insofar as Hinderaker stated "that one reason the insurance premium

2

rates were going to be higher was because one employee's daughter needed treatments every six to eight weeks and the treatments were expensive." Complaint at 2.

On August 14, 2012, a day after Adams entered treatment, Adams's wife, Jody, spoke with Dennis Holien (Chairman Holien), Persona's Chairman of the Board, regarding Hinderaker's November 2011 comments regarding the Adams' daughter's treatments. Chairman Holien stated that Persona runs a report "every so often to see which employees have the highest payout of insurance benefits, . . ." and the report indicated that Adams was an employee with one of the highest amounts. Complaint at 4.

In February 2013, Adams filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). On September 29, 2014, the EEOC dismissed Adams's charge and issued a Notice of Suit Rights. This action followed.

## DISCUSSION

In considering a motion under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, cited in *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.* (internal citations omitted*); Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). Although a plaintiff in defending a motion under Rule 12(b)(6) need not provide specific facts in support of its allegations, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), it must include sufficient factual information to provide the grounds on which her claim rests, and to raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555–556 & n. 3. Although Federal Rule of Civil Procedure 8 may not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). What is demanded to survive a motion to dismiss is facial plausibility. *Id.* Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

### A. Count II, Retaliation[1]

"The ADA provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'" *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (quoting 42 U.S.C. § 12203(a)). The Eighth Circuit "has also held that a person who is terminated for unsuccessfully seeking an accommodation may pursue a retaliation claim under the ADA, if he had a good faith belief that the requested accommodation was appropriate." *Id.* (citing *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003)). To state a claim of retaliation in violation of the ADA, Plaintiff must (1) establish he was engaged in a protected activity, (2) show he suffered adverse employment action, and (3) show a causal connection between the first two elements. *Heisler*, 339 F.3d at 632. *See Foster v. Time Warner*, 250 F.3d 1189, 1194 (8th Cir. 2001). *See also Mora v. University of Texas Southwestern Medical Center*, 469 Fed. Appx. 295, 298 (5th Cir. 2012) (applying the *prima facie* factors when reviewing a district court's grant of Rule 12(b)(6) dismissal).

---

[1] The Eighth Circuit indicated in *Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681 (8th Cir. 1998), that alcoholism may qualify as a disability under the ADA, but "evidence that [] [the] alcoholism [has] impaired a major life activity" must be presented by the plaintiff. *Wallin*, 153 F.3d at 686 n. 4 (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 315-16 (5th Cir. 1997) (there must be an individualized showing that alcoholic plaintiff suffered permanent impairment, and evidence that alcoholics, in general, are impaired is inadequate)); *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1105 (Fed. Cir. 1996) (citing *Crewe v. United States Office of Personnel Management*, 834 F.2d 140, 141-42 (8th Cir. 1987)) ("[I]t is well-established that alcoholism meets the definition of a disability."). The issue of whether Plaintiff's alcoholism qualifies as a disability under the ADA, however, is not contested in the instant motion and the Court will proceed under the presumption that Plaintiff is disabled within the meaning of the ADA. Notwithstanding, the ADA prohibits retaliation against a good faith request for accommodation even if the alleged disability turns out to be uncovered by the ADA. *Heisler v. Metropolitan Council*, 339 F.3d 622, 630 n. 5 (8th Cir. 2003). *See Larkin v. Methacton School Dist.*, 773 F. Supp. 2d 508, 529 (E.D. Pa. 2011) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3rd Cir. 1997)) ("'[P]laintiff[s] in [] ADA *retaliation* case[s] need not establish that [they are] a qualified individual with a disability.'") (internal quotations omitted) (emphasis in original).

The first issue that must be resolved in Plaintiff's favor in order to state a claim of retaliation is whether he engaged in a protected activity. A request for an accommodation is a protected activity and it is, therefore, unlawful to retaliate against such a request. *See Kirkeberg v. Canadian Pacific Ry.*, 619 F.3d 898, 908 (8th Cir. 2010). *See also Heisler*, 339 F.3d at 632 (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3rd Cir. 2003)). "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer . . . the initial burden rests primarily on the employee . . ." to make the employer aware of a disability. *Wallin v. Minnesota Dept. of Corrections*, 153 F.3d 681, 689 (8th Cir. 1998). The employer is deemed to know of the disability when the employee expressly tells the employer, a third-party tells the employer, or the employer observes the disability. *Schmidt v. Safeway, Inc.*, 864 F. Supp. 991, 997 (D.Or. 1994). Upon being made aware of the disability, an employer "must 'make a reasonable effort to determine the appropriate accommodation.'" *EEOC v. Convergys Customer Management Group, Inc.(Convergys)*, 491 F.3d 790, 795 (8th Cir. 2007) (quoting *Cannice v. Northwest Bank Iowa N.A.*, 189 F.3d 723, 727 (8th Cir. 1999)).

It is clear that a request from an employee suffering from alcoholism that he is granted a leave of absence to attend in-patient recovery would be protected from retaliation. It is of no consequence that the request is ultimately denied or that the employee does not qualify as disabled. In the context of retaliation, therefore, the ADA operates to protect employees seeking reasonable accommodation. What Defendant is contesting, however, is whether Plaintiff actually requested the accommodation, i.e., engaged in a protected activity. Defendant asserts that it, and not Plaintiff, recommended that Plaintiff seek treatment for alcoholism thereby eliminating any claim that Plaintiff engaged in the protected activity of requesting an accommodation. The Eighth Circuit has not squarely dealt with the constitution of a "request," but *Office of the Senate Sergeant at Arms v. Office of Senate Fair Employment Practices (Sergeant at Arms)*, 95 F.3d 1102 (Fed. Cir. 1996) and *Corbett v. National Products Co.*, Civ. A. No. 94-2652, 1995 WL 133614 (E.D. Pa. March 27, 1995), each offer guidance.

In *Sergeant at Arms*, William L. Singer (Singer) was employed with the United States Capital Police (Capital Police). The Capital Police had in place a policy requiring employees to

notify the department of unscheduled absences at least one hour prior to the beginning of a shift. Singer violated this rule a total of 14 times and received notices of discipline. Due to the high number of absences, the Capital Police inquired into whether alcohol consumption was causing Singer's violations. Singer denied. Subsequently, upon receiving several more notices of discipline, Singer was informed that one more could result in the termination of employment. Singer eventually received another notice for violating the absence rule. At this point, Singer informed Capital Police that alcoholism was causing his absences. Singer voluntarily entered rehabilitation. Singer's termination was nevertheless recommended, but he was thereupon offered a "last-chance agreement." *Sergeant at Arms*, 95 F.3d at 1104. The agreement, which Singer unsuccessfully attempted to negotiate, required Singer to participate "in a substance dependency recovery program, but contained no provision for retroactive relief." *Id.* Singer thereafter filed an employment discrimination claim against the Office of the Senate Sergeant at Arms ("SAA") with the Independent Hearing Board of the Office of Senate Fair Employment Practices (the "Board"). The Board concluded that Singer qualified as a disabled individual under the ADA, that the Capital Police had knowledge of Singer's disability prior to its institution of the agreement, that Singer was entitled to reasonable accommodation, and that the Capital Police failed to provide a reasonable accommodation. The Board ultimately found that Singer was entitled to "'a firm choice and a fresh start,' meaning that [Singer] was entitled to a choice between treatment and discipline and that, if he chose treatment, prior discipline would be rescinded and all documentation of the discipline would be purged from his personnel file." *Id.* The SAA appealed, arguing that "it had no duty to provide Singer with a retroactive accommodation for his alcoholism . . ." *Id.* at 1105.

On the issue of whether the SAA was required to grant Singer the "firm choice and fresh start," it argued that its prospective accommodation based on Singer's disclosure of his alcoholism was sufficient and that "were [] such a retroactive accommodation [required of employers], employees whose past disciplinary violations are expunged would not be held to the same standard as others; rather, they would be treated more favorably than others, . . ." *Id.* at 1106. The SAA further argued that the ADA allowed employers to hold alcoholic employees to the same standards as non-alcoholic employees. The Federal Circuit agreed that "retroactive

6

accommodation" is not required, but stated that the "firm choice" offer comported with the ADA's statutory requirement of reasonable accommodations.

> Treatment would seem to be essential to any accommodation for alcoholism. If an individual refuses treatment when offered, then discipline is appropriate. . . . The SAA provided Singer with such an accommodation. It advanced him leave to obtain in-patient treatment, and it allowed him to perform his job on a restricted-duty status while he continued his recovery. The SAA's accommodation enabled Singer to perform the essential functions of his job and that was in conformity with the requirements of the statute.

*Id.* at 1107. The court went on to note that a reasonable accommodation is required as to a known disability and the duty to accommodate arises only when such knowledge is gained by the employer, "and its duty is therefore prospective from the time when it gained knowledge of the disability."[2] *Id.* See *Hill v. Kansas City Area Transp. Authority*, 181 F.3d 891, 894 (8th Cir. 1999) (holding that an employee requesting a second chance after violating a work policy is not analogous to requesting a disability accommodation).

In *Corbett*, Frederick R. Corbett (Corbett), an alcoholic, entered into a 28-day treatment facility on his own accord. The following day, Corbett's wife called his employer, National Products Co. (National), to inform it that Corbett had entered treatment. A day after being notified of Corbett's entry into treatment (two days after Corbett actually entered treatment), Corbett's wife was told to notify Corbett that he was terminated as of that day. Corbett sued National alleging that National terminated his employment in violation of the ADA. "In essence, plaintiff contended that he was fired because he sought treatment for alcoholism." *Corbett*, 1995 WL 133614, at *1. A jury found in favor of Corbett and National moved for judgment notwithstanding the verdict.

National argued "that it had no duty to hold Corbett's job open while he was in rehabilitation. . . ." because (1) Corbett failed to specify a request for accommodation, (2) Corbett was incapable of performing the job even with accommodation, and (3) the ADA does

---

[2] The Eighth Circuit has indicated, in dicta, that when employers act on a perception that an employee suffers from alcoholism by attempting to establish such "and demonstrates performance problems related to [] alcoholism, [the employer] might [be] able to avail itself of the opportunity to accommodate [the employee's] disability." *Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 825 (8th Cir. 1997) (discussing the knowledge requirement enunciated by the Federal Circuit in *Sergeant at Arms*, 95 F.3d at 1107).

7

not require employers to keep a job vacant for an employee who cannot regularly attend. *Id.* at *3 (emphasis added). As to National's first argument, the court stated that "[w]hile Corbett did not specifically request a reasonable accommodation from National, he did so in essence when his wife called to inform [National] of his entry into the treatment program." *Id.* at *4. Title VII "does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term accommodation.'" *Id.* (quoting *Safeway*, 864 F. Supp. at 997). *See England*, 644 F.3d at 1049 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3rd Cir. 1999)) ("Although the notice or request 'does not have to be in writing, be made by the employee, or formally invoke magic words 'reasonable accommodation,' it 'nonetheless must make clear that the employee wants assistance for his or her disability.'") (emphasis omitted)); *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) ("Once the employer has been put on notice, the employer must take reasonable steps to accommodate the employee's disability."). The court likewise rejected National's final two assertions as without merit. *Id.* ("National's argument that it had no duty to provide Corbett with a reasonable accommodation is without merit. National contends it had no such duty because plaintiff could not perform his job . . . and employers have no obligation under the ADA to hold open a job. . .").

The Court agrees with Adams and the *Sergeant at Arms* holding that a request for leave to attend rehabilitation for alcohol dependency qualifies for ADA protection as a request for accommodation. It further agrees with Adams that he adequately pled that Persona retaliated against a request from Adams. The employer has a duty to reasonably accommodate an employee's disability once the employer has such knowledge of the necessity. Nothing in the ADA prescribes how the accommodation is requested. What the ADA does require, however, is that an employer reasonably accommodate the known disabilities of its employees. One such way an employer becomes aware of the need for an accommodation is being informed of an employee's disability by the employee himself. That is what happened here. Thus, Adams's admission to alcohol dependency may be construed as his request for accommodation. After all, Adams was not required to explicitly request accommodation in order for Persona's duty to accommodate to be triggered. Thus, it follows that the admission by Adams itself was the request.

8

Further, the *Corbett* court's holding regarding "magic language" is aptly applied here. From the employer's perspective, *Corbett* holds that no specific language needs to be uttered by an employee before the employer has a duty of reasonable accommodation. It therefore follows that, from the employee's perspective, the request for an accommodation itself requires no precise language. As the Eighth Circuit held in *Convergys*, once the employer has knowledge that accommodation is necessitated, it becomes its duty to accommodate. Here, Persona held a "fact finding" meeting with Adams and its suspicions as to his alcohol abuse were confirmed. Adams's confirmation of his alcohol dependency was the act necessary to put Persona on notice and trigger its duty to accommodate. While no explicit request for accommodation was made by Adams, a reasonable juror could conclude that Persona retaliated against the admission of dependency itself as it was that admission that triggered Persona's duty to accommodate. Thus, again, Adams confirming his substance dependency operated as the necessary request for accommodation and satisfies the first prong of the *prima facie* case.[3]

Next, Plaintiff must show that he was subject to adverse employment action. Termination of employment undeniably constitutes adverse employment action. *Hill v. Walker*, 918 F. Supp. 2d 819, 828 (E.D. Ark. 2013) (citing *Dropinski v. Douglas Cnty*, 298 F.3d 704, 707 (8th Cir. 2002)), aff'd, 737 F.3d 1209 (8th Cir. 2013). Plaintiff, thus, easily satisfies the second prong of the *prima facie* case as it is undisputed that he was terminated as Defendant's employee.

Finally, Plaintiff must satisfy the causation requirement. "In . . . retaliation claims, a temporal connection between an event and an adverse employment action can serve as evidence supporting a *prima facie*[] showing of causation." *Myers v. Hog Slat, Inc.*, No. C13-3032-LTS, 2014 WL 5422554, *12 (N.D. Iowa Oct. 24, 2014). "[T]iming *alone*[,however,] is not adequate

---

[3] There is an alternative ground for finding that Adams engaged in a protected activity. The Court is of the opinion that accepting Persona's position that Adams failed to adequately request accommodation would be to condone a type of "anticipatory retaliation." *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993) ("Action taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; consequently we hold that this form of preemptive retaliation falls within the scope of 42 U.S.C. § 2000e–3(a)."); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (interpretation of Title VII should not "provide a perverse incentive for employers to fire employees who might bring Title VII claims."). While *Sauers* and *Robinson* dealt with employer retaliation against an employee's filing of a discrimination charge, filing charges and requesting accommodation both fall within the ambit of activity protected against retaliation. Thus, an employer would be equally prohibited from anticipating an employee's request for an accommodation by preemptively suggesting its own, thereby commandeering the employee's protected activity, and then terminating employment.

to establish causation unless the timing is 'very close,' usually meaning less than one month." *Id.* (citing *Lors v. Dean*, 746 F.3d 857, 865-66 (8th Cir. 2014) (stating that claims of retaliation generally require more than mere temporal connection)) (emphasis in original). *See Sprenger v. Federal Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001) ("We have been hesitant to find pretext or discrimination on temporal proximity alone and look for proximity in conjunction with other evidence."); *Walker*, 918 F. Supp. 2d at 833 (citing *Smith v. Allen Health Sys. Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (two weeks "barely" sufficient for causation)) ("In detailing what amount of time, by itself, between a protected activity and an adverse employment action is sufficient to maintain a claim in the retaliation context, the Eighth Circuit concluded that two months cannot justify a finding of causation, where a 'matter of weeks' can.").

Beyond timing, the Eighth Circuit has also held that "not every prejudiced remark made at work supports an inference of illegal employment discrimination." *Lors*, 746 F.3d at 866 (citing *Rivers-Frison v. Southeast Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998)) (alterations omitted). The Eighth Circuit has "carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Id.* (citing *Rivers-Frison*, 133 F.3d at 619). To demonstrate causation, Adams "must provide evidence that [his] requests for accommodations were a 'substantial or motivating factor' for 'his termination.'" *Cloe*, 712 F.3d at 1180 (quoting *Smith v. Bray*, 681 F.3d 888, 900 (7th Cir. 2012)). To that end, Adams may "'present[] a convincing mosaic of circumstantial evidence that would support the inference that a retaliatory animus was at work.'" *Id.* (quoting *Bray*, 681 F.3d at 910).

Drawing all logical inferences in Adams's favor, the record before the Court alleges facts, which, taken as true, raise more than a speculative right to relief. *Twombly*, 550 U.S. at 555. The Complaint states that Adams was confronted about his alcohol consumption; he admitted to struggling with dependency; he was granted leave to and did attend treatment; and he was subsequently terminated from employment. The Court finds this sequence sufficient to withstand Defendant's Rule 12(b)(6) motion to dismiss. While temporal connection may be used

circumstantially, unless the timing is very close it, without more, will not be enough to successfully plead causation. Adams was terminated approximately two months after he admitted to alcoholism and Persona offered him leave to enter treatment. That amount of time, alone, cannot establish causation. As noted above, the Eighth Circuit has held that even two weeks is "barely" sufficient for establishing causation. *Smith*, 302 F.3d at 833. The Complaint, however, alleges other circumstantial evidence that satisfies the causation requirement of the *prima facie* case. Adams was granted ten weeks of leave to pursue treatment. Pay for those ten weeks was to be drawn from Adams's accumulated vacation pay. Rather than allowing the full ten weeks to elapse, Persona reevaluated Adams's employment status 30 days after leave was granted and terminated the employment short of the full ten weeks. The Court finds these factual allegations sufficient to plead a claim of retaliation. Therefore, Count II of Adams's Complaint withstands Persona's Rule 12(b)(6) motion to dismiss.

## B. Count IV, Associational Discrimination

The ADA provides in part: "As used in subsection (a) of this section, the term 'discriminate' includes . . . (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4). *See Lopez v. City of Brookings*, 489 F. Supp. 2d 971, 979 (D.S.D. 2007). "Under the ADA, it is unlawful to discriminate against an employee because of his association with a person with a disability." *Myers*, 2014 WL 5422554, at *11. Moreover, the Act proscribes discriminatory conduct that is based on costs incurred by the employer resulting from the disability of an employee's family member. *Id.* (citing *Larimer v. Int'l Bus. Mach. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)). To properly state a claim of associational discrimination, a plaintiff must show "(1) he was qualified for the position, (2) he was subject to adverse employment action, (3) he was known to be associated with a disabled individual, and (4) his discharge occurred under circumstances raising a reasonable inference that the association with a disabled individual was a determining factor in [Defendant's] decision to [discharge Plaintiff]." *Myers*, 2014 WL 5422554, at *11. "These allegations constitute a *prima facie* case, and are required to show a 'causal connection' between a defendant's knowledge of an association with a disabled individual and an adverse

employment action." *Coffman v. QC Financial*, No. 8:07CV427, 2008 WL 4104676, *2 (D. Neb. Aug. 29, 2008) (citing *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 480 (N.D.N.Y. 1999)) (applying the four factor test in deciding if the plaintiff could withstand a Rule 12(b)(6) motion to dismiss).

Adams has adequately alleged a *prima facie* case of associational discrimination. First, he was qualified for his position as, since first starting at Persona, he was promoted to Plant Manager. Second, as discussed above, he was terminated, which qualifies as adverse employment action. Third, Persona was aware that Adams's daughter was disabled and required treatment. As the Complaint alleges, it was disclosed at the November 2011 meeting that an employee's dependent, i.e., Adams's daughter, was causing insurance premiums to rise due to her necessary medical treatments. In addition, a Persona official told Adams's wife that Adams was one of two employees with the highest insurance payouts. Taken together, it can be concluded that Persona was aware that Adams had a daughter covered by and using the insurance provided by Persona.

Fourth, the Complaint sufficiently alleges causation, satisfying the final prong.[4] The Complaint, states that Persona knew Adams's daughter was disabled and required treatment, he was one of two employees causing insurance premiums to rise, and that Adams was terminated as a result. Moreover, it has been sufficiently alleged that Persona knew it was Adams's daughter causing the insurance premiums to rise the 22.51%, which Adams asserts caused Persona to terminate him. During the November 2011 meeting, Hinderaker impliedly pointed to Adams as a cause of the premium increase by stating that "one reason the insurance premium rates were going to be higher was because one employee's daughter needed treatments every six to eight weeks and the treatments were expensive." Complaint at 2. The Complaint also states that

---

[4] If Adams's only basis of causation was temporal in nature, it would be insufficient. "In employment discrimination . . . , a temporal connection between an event and an adverse employment action can serve as evidence supporting a prima facie showing of causation." *Myers*, 2014 WL 5422554, at * 12. Timing, alone, is insufficient unless the temporal connection is near in time, "usually meaning less than one month." *Id.* (citing *Lors*, 746 F.3d at 866). The Complaint alleges that Persona was aware in November 2011 that two employees were causing insurance premiums to rise. Persona's awareness that Adams was one of the two employees was confirmed in August 2012 when a Persona official spoke to Adams's wife regarding Adams's daughter. Adams was terminated on October 10, 2012. The temporal connection of two months with no other basis for causation is insufficient to independently prove causation. As explained, there is other circumstantial evidence to also support a causation claim at this state of the case.

Adams's daughter requires the medical treatment described by Hinderaker. In conjunction with Hinderaker's comments at the November meeting, Chairman Holien's statements to Adams's wife provides further circumstantial evidence that Persona knew Adams was a cause of the increase in insurance costs. Thus, the Complaint adequately imputes to Persona knowledge of Adams's daughter and her needs. Further, the several statements made by Persona officials provide sufficient circumstantial evidence that Persona engaged in associational discrimination. Therefore, Adams withstands Persona's Rule 12(b)(6) motion to dismiss Count IV of the Complaint.

## CONCLUSION

Adams has sufficiently alleged a *prima facie* case of retaliation. The Court finds that his admitting to alcohol dependency constitutes a request for an accommodation against which the ADA prohibits employer retaliation. In addition, Adams has also sufficiently alleged a *prima facie* case of associational discrimination. The facts alleged in the Complaint provide satisfactory circumstantial evidence that Adams was terminated from his position with Persona as a result of his daughter needing medical treatment. Accordingly,

IT IS ORDERED (1) that Defendant's motion to dismiss Counts II and IV of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied and (2) that Adams furnish the Court with a copy of the relevant Right to Sue Letter.

Dated this 21st day of August, 2015

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By _____
Deputy

13